United States District Court
Southern District of Texas
**ENTERED**
January 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHR SOLUTIONS, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-CV-01901 |
| | § | |
| GILA RIVER TELECOMMUNICATIONS, INC., | § | |
| *Defendant*. | § | |

## MEMORANDUM AND OPINION

Before the Court is Defendant Gila River Telecommunications, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  ECF 18.  For the reasons stated below, Defendant's Motion (ECF 18) is GRANTED.  Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

### I.    Factual and Procedural Background.

Defendant Gila River Telecommunications, Inc. ("GRTI") is a telecommunications service provider owned by the Gila River Indian Community ("the Community"), a federally-recognized Indian tribe located in Arizona.  ECF 19 at  ¶¶ 2, 8.    GRTI was incorporated under Community law to provide communications services to those living within the boundaries of the Community Reservation.  *Id.* at ¶ 8.

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes.  ECF 15-16, 21.

Plaintiff CHR is a provider of business support software solutions, office support software solutions, and network operations services, among other things. ECF 1 at ¶ 16.  GRTI selected CHR as the vendor to replace its billing software.  *Id.* at ¶ 18.  The parties entered into several inter-related agreements whereby CHR agreed to license its software platform to GRTI and to perform related development, implementation, and maintenance work.  *Id.* at ¶¶ 21, 24.

After GRTI allegedly stopped making the required payments under the agreements, Plaintiff filed suit against GRTI on May 23, 2023, asserting claims for breach of contract, anticipatory breach/repudiation of contract, and quantum meruit. ECF 1 at 9–11.  Plaintiff alleges that GRTI has failed to make a payment since November of 2022 and currently owes Plaintiff over $247,000.00, plus late fees.  *Id.* at ¶ 47.  Plaintiff's Complaint invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1332 or, alternatively, 28 U.S.C. § 1330.  *Id.* at ¶¶ 11–12.

On August 7, 2023, GRTI filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction asserting tribal sovereign immunity.  ECF 18.  Plaintiff responded to the Motion (ECF 24); GRTI filed a reply (ECF 25).  Upon Plaintiff's request, the Court held a hearing on the Motion on December 11, 2023.  *See* ECF 27; ECF 28.  At the hearing, Plaintiff confirmed that it has abandoned its argument that this Court has jurisdiction under 28 U.S.C. § 1330.  Thus, Plaintiff's sole remaining

allegation of federal court subject matter jurisdiction is diversity jurisdiction pursuant to § 1332.

## II.    Rule 12(b)(1) Legal Standards.

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  When subject matter jurisdiction is challenged, the court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).  The court may consider any of the following in resolving a Rule 12(b)(1) motion: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (citation omitted).  Where, as here, the defendant submits affidavits or other evidentiary materials, the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*

## III.   Analysis.

GRTI moves for dismissal of Plaintiff's claims based on the following arguments: (A) this court lacks subject matter jurisdiction because GRTI, an incorporated tribal entity, is considered a stateless entity and not a citizen of any state for diversity jurisdiction purposes; (B) tribal sovereign immunity deprives this

3

court of jurisdiction because GRTI functions as an arm of a federally-recognized Indian tribe that enjoys tribal sovereign immunity; and (C) this case should be dismissed because Plaintiff failed to exhaust its remedies within the tribal or Community Court.  ECF 18.  The Court addresses each of GRTI's arguments in turn.

### A. Diversity jurisdiction exists under 28 U.S.C. § 1332.

Diversity jurisdiction pursuant to § 1332 requires (1) complete diversity between the parties and (2) an amount in controversy more than $75,000.  28 U.S.C. § 1332(a).  Here, the parties dispute only complete diversity.  For complete diversity to exist, "all persons on one side of the controversy must be citizens of different states than all persons on the other side."  *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020).  The Fifth Circuit has agreed with the weight of authority from other circuits that "Indian tribes are not citizens of any state for the purpose of diversity jurisdiction."  *Mitchell v. Bailey*, 982 F.3d 937, 942 (5th Cir. 2020) (collecting cases).  Thus, tribes themselves are viewed as "stateless entities" for purposes of a jurisdictional analysis under 28 U.S.C. § 1332.

But neither the Supreme Court nor the Fifth Circuit has addressed how to determine the citizenship of a tribal corporation for diversity jurisdiction purposes. Section 1332 instructs that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).  In light

4

of the instruction in § 1332(c)(1), the Ninth Circuit has held that for jurisdictional purposes, a tribal corporation is a citizen of the state in which its principal place of business is located. *Cook v. AVI Casino Enterprises, Inc*., 548 F.3d 718, 724 (9th Cir. 2008) (holding that an entity incorporated under tribal law *is not* a citizen of the state in which incorporation occurred, but *is* a citizen only of the state in which its principal place of business is located). The Tenth Circuit has written that "[a] tribe may . . . charter a corporation pursuant to its own tribal laws, and such a corporation will be considered a citizen of a state for purposes of diversity jurisdiction." *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993). The Seventh Circuit, recognizing that it had "hewn to the mechanical application of a clear rule 'treating any corporation as a corporation for diversity purposes[,]'" went on to "join [its] colleagues in the Ninth and Tenth Circuits and hold that a corporation chartered under Native American tribal law should be treated as a citizen of a state pursuant to § 1332(c)." *Wells Fargo Bank, Nat'l Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 693 (7th Cir. 2011) (citations omitted).

Here, GRTI's principal place of business is in Arizona. ECF 1 at ¶ 9. Thus, if this Court were to follow the traditional approach for determining corporate citizenship as espoused by the Seventh, Ninth and Tenth circuits, it would find that GRTI is a citizen of Arizona. Because Plaintiff is a citizen of Texas (ECF 1 at ¶ 9), complete diversity would support subject matter jurisdiction in this Court.

However, GRTI urges the Court to follow case law from the Eighth Circuit which has rejected a literal application of § 1332(c)(1) when determining the citizenship of tribal corporations.  *See Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 673 (8th Cir. 1986) (noting that although "a literal reading of section 1332 would appear to give the district court jurisdiction" under a principal place of business analysis, "the unique legal status of Indians and Indian tribes requires consideration of Indian sovereignty as a backdrop against which the federal jurisdictional statutes must be read"); *Shingobee Builders, Inc. v. N. Segment All.*, 350 F. Supp. 3d 887, 893-94 (D.N.D. 2018) (quoting *Weeks* for the principle that "a tribal corporation's citizenship cannot be established under Section 1332(c) simply by looking to a tribal corporation's principal place of business").  At least one district court located in the Eighth Circuit has written that:

> In place of a literal reading of Section 1332(c), the operative inquiry in the Eighth Circuit considers a tribal corporation's manner of formation and purpose.  If a tribal corporation is established by a tribal council pursuant to its powers of self-government, then it must be treated as a tribal agency with no state citizenship rather that a separate corporate entity created by the tribe.

*Id.* at 894 (collecting Eighth Circuit cases).  Here, GRTI contends that it was established by the tribe to provide a service that is "intimately related to tribal self-government" and therefore, under Eighth Circuit case law, should not be considered a citizen of any state.  ECF 25 at 13–14; *see U.S. ex rel. Kishell v. Turtle Mountain Hous. Auth.*, 816 F.2d 1273, 1276–77 (8th Cir. 1987) (refusing to exercise

6

jurisdiction under § 1332 over tribal housing authority corporation because it was "formed by the Tribe for the purpose of pursuing functions intimately related to tribal self-government"). If this Court were to apply the citizenship test promoted by courts in the Eighth Circuit, it would find GRTI to be a stateless entity, a finding that would preclude diversity jurisdiction under 28 U.S.C. § 1332. *See Mitchell*, 982 F.3d at 943 (noting that the "presence of a single stateless entity as a party to a suit destroys complete diversity).

This Court concludes that the more literal application of § 1332(c)(1) provides the correct analysis for the citizenship of a tribal corporation and will follow the guidance set forth by the Seventh, Ninth, and Tenth Circuits. Not only does the statute instruct that a corporation "shall be deemed" to be a citizen of its state of incorporation and principal place of business, but the more traditional jurisdictional analysis recognizes that the issue of subject matter jurisdiction and sovereign immunity are independent bars to federal court jurisdiction. The Eighth Circuit cases which reject a literal reading of § 1332 reason that the statute must be read against the backdrop of the unique legal status of Indian tribes and Indian sovereignty. *Weeks*, 797 F.2d at 672–73. Thus, rejection of a literal reading of § 1332(c) requires the Court to wade, at least partially, into an analysis similar to that used to determine whether a tribal agency or corporation is an arm of the tribe. Thus, in the absence of guidance from the Fifth Circuit or Supreme Court, this Court

applies a literal reading of § 1332 and concludes that GRTI can be considered a citizen of the state of Arizona, the state in which its principal place of business is located.  Thus, the Court concludes that diversity jurisdiction exists in this case.

**B. Tribal sovereign immunity deprives this Court of jurisdiction.**

Indian tribes are "domestic dependent nations" that exercise "inherent sovereign authority" subject to plenary control by Congress.  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014).  A necessary corollary to the sovereignty of an Indian tribe is the "common-law immunity from suit traditionally enjoyed by sovereign powers."  *Id*.  The tribe's immunity is "jurisdictional in nature," so to the extent the tribe's sovereign authority is not abrogated by Congress or waived by the tribe, a tribe is not subject to suit in federal court.  *Spivey v. Chitimacha Tribe of La.*, 79 F.4th 444, 446–47 (5th Cir. 2023) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).

Likewise, arms or instrumentalities of the tribe also enjoy tribal sovereign immunity.  *Id*. at 447; *see also In re IntraMTA Switched Access Charges Litig.*, 158 F. Supp. 3d 571, 574 (N.D. Tex. 2015) ("Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities."); *see generally Lewis v. Clarke*, 581 U.S. 155 (2017) (acknowledging that gaming authority was "an arm of the … Tribe entitled to sovereign immunity").  Thus, federal courts lack subject matter jurisdiction over a suit against an arm or

instrumentality of the tribe unless it has waived immunity or Congress has authorized the suit. *Spivey*, 79 F.4th at 446–47 (citing *Bay Mills*, 572 U.S. at 789). GRTI bears the burden to demonstrate that it is an arm of the tribe, whereas Plaintiff bears the burden to prove that immunity has been waived or abrogated. *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176–77 (4th Cir. 2019).

      **1.  GRTI has met its burden to demonstrate it is an arm of the tribe entitled to sovereign immunity.**

Although the Fifth Circuit has not yet addressed the issue, courts considering whether an entity is an arm of a tribe generally follow the test set forth in *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010). *See, e.g.*, *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014); *Mestek v. LAC Courte Oreilles Cmty. Health Ctr.*, 72 F.4th 255 (7th Cir. 2023); *Williams*, 929 F.3d at 177. Under the *Breakthrough* framework, courts examine the following factors: (1) the method of creation of the entity; (2) the entity's purpose; (3) its structure, ownership and management, including the tribe's control over the entity; (4) whether the tribe intended for the entity to be immune from suit; (5) the financial relationship between the entity and the tribe; and (6) whether the purposes of tribal sovereign immunity would be served by recognizing the entity as immune.

In *In re IntraMTA Switched Access Charges Litigation*, 158 F. Supp. 3d 571 (N.D. Tex. 2015), the Northern District of Texas considered the above factors and

concluded that GRTI and two other telecommunications corporations (referred to collectively in the opinion as "the Tribal Defendants") functioned as an arm of the tribe and enjoyed sovereign immunity.[2]  Specifically, the Northern District held:

> The Tribal Defendants have adduced undisputed evidence that they are organized, operated, chartered, and wholly owned by their respective Indian tribes; that they were created under tribal law; that they were created to upgrade and improve telecommunications services on the reservations of their parent tribes and that they provide [local exchange carrier or] LEC services exclusively on and within the reservations of their parent tribes; that they are regulated by their parent tribes, not the ACC [Arizona Corporation Commission], and that they do not file tariffs with the ACC; that they are organized under a Charter of Incorporation or Articles of Incorporation and Bylaws issued by the governing body of their parent tribes; that their organizational documents describe economic, social, and other benefits that the Tribal Defendants are intended to provide their parent tribes; that members of their Boards of Directors are appointed by the governing bodies of their parent tribes; and that their revenues inure to the parent tribes.

158 F. Supp. 3d at 576.  Like the court in the Northern District of Texas, this Court finds that GRTI has met its burden to establish that it is an arm of the tribe and therefore enjoys the tribe's immunity from suit unless it has waived that immunity.

Here, GRTI has presented evidence demonstrating the following:

- the Community established GRTI pursuant to Community law in 1988 (ECF 19 at ¶ 8);

- GRTI was established "to provide necessary public services to Community members living within the boundaries of the Reservation" and it provides "direct benefits to Community members through its discounted broadband and telecommunications services," (*id.* at ¶¶ 8, 18);

---

[2] *In re IntraMTA* involved numerous entity-defendants that were wholly owned and operated by American Indian tribes ("Tribal Defendants").  158 F. Supp. 3d at 573.

- the Community owns 100% of GRTI's outstanding shares, (*id.* at ¶¶ 8, 13);

- the Council, the Community's governing body, appoints a five-person Board of Directors which oversees GRTI's operations, (*id.* at ¶ 9);

- the authority to appoint and to remove directors on GRTI's Board is exclusive to the Council, (*id.*)

- the current members of GRTI's Board of Directors are elected members of the Council and enrolled members of the Community, (*id.* at ¶ 10);

- GRTI owes regular reporting obligations to the Community, including the submission of annual reports to the Council and quarterly meetings with the Council and committees to report on operational and budgetary issues, (*id.* at ¶¶ 11–12);

- in a January 1999 Resolution, the Community removed the "sue and be sued" language from GRTI's Articles of Incorporation with the stated intent to "enhance GRTI's sovereign immunity," (*id.* at ¶ 14);

- as GRTI's sole shareholder, the Community is entitled to 100% of any economic returns earned by GRTI, (*id.* at ¶¶ 8, 13); and

- GRTI makes quarterly monetary distributions to the Community which are used as a source to fund "[c]ritical governmental programs … including, (but not limited to): workforce development, housing, infrastructure construction, improved connectivity and social services," (*id.* at ¶ 19).

Having considered GRTI's evidence, the six *Breakthrough* factors, Plaintiff's arguments, and the fact that GRTI has already been found to be an arm of the tribe by a court in this circuit, the Court concludes that GRTI has met its burden to demonstrate that it functions as an arm of the tribe and is entitled to tribal immunity from suit unless that immunity has been waived.

## 2. CHR has not met its burden to show that Congress has abrogated GRTI's sovereign immunity.

"To abrogate tribal immunity, Congress must 'unequivocally' express that purpose." *C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). This is a "high bar" to meet. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 385 (2023) ("[W]e will not find an abrogation of tribal sovereign immunity unless Congress has conveyed its intent to abrogate in unequivocal terms. That is a high bar.").

Plaintiff briefly asserts that because GRTI is involved in the heavily-regulated telecommunications industry, any alleged immunity has been abrogated by federal law. ECF 24 at 15. Specifically, Plaintiff maintains that the Communications Act of 1934's reference to "foreign" in the definition of "common carrier," which includes any entity involved in "interstate or foreign" communication, abrogates any tribal immunity. *Id.* However, the case on which Plaintiff relies is inapposite because it states that "Indian tribes are domestic governments," not foreign ones. *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055 (9th Cir. 2004). Regardless, Plaintiff's Complaint asserts state law claims; it has not asserted claims arising under the Communications Act. *See Rudison v. MD Anderson Cancer Ctr.*, No. 23-20423, __ F.4th __, 2024 WL 319265, at *1 (5th Cir. Jan. 29, 2024) (rejecting plaintiff's argument that Title IX waived defendant's sovereign immunity when plaintiff had

12

"not sued under Title IX, but under the ADEA"); *cf. Lac du Flambeau*, 599 U.S. 382
(holding that Bankruptcy Code abrogated tribal sovereign immunity in case brought
under Bankruptcy Code).   The Court finds Plaintiff's argument that Congress
abrogated GRTI's sovereign immunity to be without merit.

### 3. CHR has not met its burden to show that GRTI expressly waived its sovereign immunity.

Plaintiff CHR maintains that GRTI waived tribal sovereign immunity by,
among other things, agreeing to exclusive jurisdiction in state and federal courts of
Harris County, Texas for all disputes arising between the parties in connection with
the Master Services Agreement ("MSA").   ECF 24 at 11.   GRTI responds with two
arguments:   (1) the language CHR relies on as a waiver does not constitute the
required "clear" and "unequivocal" waiver of immunity because it is internally
inconsistent and does not explicitly commit the parties to a specific dispute
resolution process in a specific jurisdiction (*see* ECF 25 at 24–27); and (2) the
language in the MSA cannot be a clear and unequivocal waiver of GRTI's immunity
because Community Law, to which CHR expressly agreed to be bound, requires the
Community Council to preauthorize any waiver of GRTI's immunity and that
authorization did not occur.   *See id*. at 27–28.   In response to GRTI's second
argument, Plaintiff asserts that GRTI's CEO/GM who executed the MSA had actual
authority to bind GRTI to the MSA and all of its provisions and therefore, GRTI is

bound by the language Plaintiff interprets as a waiver of immunity.  *See* ECF 24 at 13–14.

A waiver of tribal sovereign immunity must be clear, unequivocally expressed and not implied.  *C&L Enterprises, Inc.*, 532 U.S. at 418 (citing *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)); *Santa Clara Pueblo*, 436 U.S. at 58.  Although the waiver of sovereign immunity cannot be implied, a clear waiver need not use the words "sovereign immunity." *C&L Enterprises, Inc.*, 532 U.S. at 420 (quoting *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659–660 (7th Cir. 1996)).  An entity entitled to tribal sovereign immunity may expressly waive that immunity either in its charter or by contract or agreement.  *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 921 (6th Cir. 2009).  The burden of demonstrating an express waiver of tribal sovereign immunity rests with the party asserting the waiver.  *Williams*, 929 F.3d at 177.

      **a.  The purported waiver of sovereign immunity in the MSA was not authorized by Community Council as required for tribal corporations, like GRTI, that lack the capacity to sue and be sued.**

GRTI has presented evidence demonstrating that the Community Code requires the Community Council to authorize any waiver of GRTI's sovereign immunity.  Specifically, GRTI has demonstrated that the Community established GRTI in 1988 pursuant to Community law (ECF 19 at ¶ 8), and through an

14

amendment of GRTI's Articles of Incorporation in 1999, removed the ability of GRTI to "sue or be sued in the corporate name."  ECF 19 at ¶ 14; ECF 19-1 at 22 ("Whereas GRTI desires to enhance its sovereign immunity by deleting the phrase 'To sue and be sued in the corporate name' from Article II of the Articles of Incorporation…").  Thus, according to its amended Articles of Incorporation, GRTI has lacked the capacity to sue or be sued in its own name since 1999.

Title 4 Chapter 2 (Sovereign Immunity Code) of the Gila River Indian Community Code, enacted in 2019 "for the purpose of 'codifying sovereign immunity principles and the limited circumstances under which sovereign immunity may be waived' pursuant to the laws of the Community[,]" (ECF 19 at ¶ 15), sets forth regulations governing a waiver of immunity by tribal corporations having the capacity to sue or be sued and by tribal entities lacking that capacity.  Section 4.204.D of the Sovereign Immunity Code addresses waivers of immunity for Community corporations:[3]

> **4.204.D Community Corporations.**  The *Community Council may expressly authorize Community corporations to waive their sovereign immunity pursuant to specific provisions in the Community corporation's articles of incorporation,* charter, plan of operation or other organizing documents.  Unless the articles of incorporation, charter, plan of operation or other organizing documents for a Community corporation provide otherwise, *a "sue and be sued" or*

---

[3] GRTI meets the definition of "Community corporation" in Section 4.202.B of the Sovereign Immunity Code:  "Community corporation means a corporation, limited liability company or other business, commercial or development entity which is partially or wholly-owned by the Community and subject to the control of the Community Council."  ECF 19-1 at 92.

> *similar clause in a Community corporation's organizing documents shall be narrowly construed as a limited waiver of the Community corporation's sovereign immunity to be sued in the Community Court or federal court if such suit is authorized by a formal written resolution of the Community corporation's board of directors.  A "sue and be sued" or similar clause shall authorize Community corporations to approve contracts…which contain a binding arbitration provision allowing for enforcement of an arbitration award against the Community corporation in Community Court or federal court.*

ECF 19-1 at 94 (emphasis added).

GRTI is a Community corporation whose articles of incorporation lack a "sue or be sued" clause.  Therefore, pursuant to the Community's Sovereign Immunity Code, GRTI cannot approve a contract that includes a waiver of immunity like those authorized under Section 4.204.D, and according to Section 4.204.E, any waiver must be authorized by the Community Council.  ECF 19 at ¶ 16; ECF 19-1 at 95 ("**4.204.E Other Waivers**.  The Community Council must approve any waiver of sovereign immunity not expressly authorized by 4.204.").  GRTI has presented uncontroverted evidence that the Community Council never provided a written or express waiver of sovereign immunity for GRTI in connection with the proceedings in this case.  ECF 19 at ¶ 28.

Several courts have held that waivers of immunity are ineffective where a tribal entity's organizing documents or tribal law require tribal approval of any waiver of sovereign immunity.  *See Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685-86 (8th Cir. 2011) (finding no waiver of sovereign immunity where

16

tribal corporation's charter allowed it to "sue and be sued … in courts of competent jurisdiction," but only to the extent the waiver of immunity was approved by resolution duly adopted by the tribal corporation's Board of Directors); *Memphis Biofuels,* 585 F.3d at 921–22 (finding no waiver of sovereign immunity resulted from contract expressly waiving all immunity where tribal corporation's federal charter required board resolution to waive tribal immunity); *Bird Indus., Inc. v. Tribal Bus. Council of Three Affiliated Tribes*, No. 1:21-CV-070, 2022 WL 2666062, *5–6 (D.N.D. July 11, 2022) (finding no waiver of sovereign immunity resulted from arbitration clause in contract where waiver had not been approved by Tribal Business Council as required by tribal corporation's articles of incorporation); *Churchill Fin. Mgmt. Corp. v. ClearNexus, Inc*., 802 S.E.2d 85, 90 (Ga. Ct. App. 2017) (citing *Memphis Biofuels* and finding no waiver of tribal corporation's sovereign immunity resulted from mandatory arbitration clause where specific procedures for waiver of immunity in tribal corporation's articles of incorporation were not followed); *ACF Leasing v. Oneida Seven Generations Corp*., No. 1-14-3443, 2015 WL 5965249, at *7–8 (Ill. App. Ct. Oct. 13, 2015) (finding that, even if tribal corporation had been a party to contract with mandatory jurisdiction for all disputes "in the federal or state courts situated in Cook County, Illinois," no waiver would have occurred because immunity had not been waived by resolution as required by the Tribe's bylaws).   CHR argues that tribal law limiting the

circumstances under which a waiver of immunity may be effected is irrelevant to the determination of whether immunity was waived, citing *Smith v. Hopland Band of Pomo Indians*, 115 Cal. Rptr. 2d 455, 462 (Ct. App. 2002). ECF 24 at 14. However, in *Smith v. Hopland* the California court found that the intent of the tribal ordinance was satisfied because the Tribal Council, by resolution, approved the contract containing the mandatory arbitration clause that constituted an express waiver of immunity:

> [I]t is clear that the purpose of the Tribal sovereign immunity ordinance is to ensure that no waiver of sovereign immunity is made by a single Tribal officer, and that instead such waivers be made only by formal action of its governing body, the Tribal Council. That purpose is served here because, the Tribal Council, with full knowledge of its terms, approved the contract by resolution.

*Id.* at 461–62. The California court went on to question the premise of whether the waiver issue should be determined by tribal law, but concluded that:

> where, as here, the person negotiating and signing the contract is authorized to do so, and the Tribal Council approves the contract, the question whether that act constitutes a waiver is one of federal law.

*Id.* at 462. In this case, no "sue or be sued" clause authorized GRTI to approve a contract with an arbitration clause that operates as a limited waiver of immunity. Furthermore, there is no evidence in this case that the Community Council approved the MSA containing the purported waiver language. The undisputed evidence in the record demonstrates that the Community Council has not approved any waiver of sovereign immunity. Thus, there can be no argument here as there was in *Smith v.*

*Hopland*, that the purpose of the provisions of Sovereign Immunity Code applicable to Community corporations lacking "sue and be sued" language in their articles of incorporation, was served.  The Court finds persuasive the case law that precludes effective waivers of sovereign immunity that fail to comply with tribal law or a tribal corporation's organizing documents.

Plaintiff maintains that GRTI is bound by the purported waiver of immunity in the MSA regardless of whether the Community Council approved the waiver, because its CEO/GM had authority to sign the agreement and that GRTI is estopped from arguing otherwise because it has repeatedly ratified the agreement.  ECF 24 at 13–15.  First, whether GRTI's CEO/GM had authority to sign the MSA is a different question from whether, in the absence of a "sue and be sued" provision in GRTI's Articles of Incorporation, GRTI's agent could contractually waive sovereign immunity without approval of the waiver by the Community Council.  Because GRTI has no capacity to "sue or be sued," the Community Code requires the Community Council to approve any waiver of sovereign immunity—that power is not granted to GRTI.  Likewise, an agent or person authorized to sign contracts on behalf of GRTI maintains only the authority to waive sovereign immunity possessed by GRTI.  As set forth above, GRTI's Articles of Incorporation do not give it the power to sue and be sued and therefore, GRTI was not authorized to "approve contracts" containing a "provision allowing for enforcement of an arbitration award

. . . in Community Court or federal court." ECF 19-1 at 94. Additionally, any waiver not expressly authorized in the Sovereign Immunity Code are required to be approved by the Community Council. Thus, GRTI had no authority to waive its sovereign immunity absent approval by the Community Council. S*ee Memphis Biofuels*, 585 F.3d at 922 (holding tribal entity's charter controlled and where charter-required board approval was not obtained, sovereign immunity "remained intact"). Because GRTI lacked that authority, its agents also lacked that authority. *See World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 276 (N.D.N.Y. 2000) (holding that a senior vice president's signing of agreement containing express waiver of sovereign immunity provision was ineffective because that right was reserved exclusively to the tribal council).

In addition, courts have rejected the argument that a tribal entity is equitably estopped from asserting sovereign immunity when an authorized representative signs an agreement containing a waiver sovereign immunity. *See, e.g.*, *Memphis Biofuels*, 585 F.3d at 922 (holding that tribal entity was not estopped from asserting sovereign immunity even though counter-party believed contractual waiver of immunity had been approved by the board as required; the tribal official's waiver of immunity by signing the agreement, absent board approval of the waiver, was inherently unauthorized and could not bind the tribe); *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1295 (10th Cir. 2008) (holding that tribal

enterprise created under tribe's constitution was not equitably estopped from asserting tribe's sovereign immunity even where its agents misrepresented that it was division of a tribal corporation for which immunity had been waived by a "sue or be sued" clause; noting that "misrepresentations of the Tribe's officials or employees cannot affect its immunity from suit").

The Court concludes that absent the authority to sue and be sued in its own name, neither GRTI nor its agents had authority to waive tribal sovereign immunity absent the approval of the Community Council. Therefore, GRTI is not estopped from asserting sovereign immunity because its CEO/GM signed the MSA containing the waiver language or because GRTI ratified or performed under the MSA.

### b. Alternatively, GRTI did not expressly waive sovereign immunity in the MSA because the language in the MSA is ambiguous and not a clear waiver of sovereign immunity.

Whether an arm of the tribe has waived sovereign immunity is decided under federal law. *C&L Enterprises, Inc.*, 532 U.S. at 418–419 (applying federal law to determine whether contractual provisions effected a waiver despite Oklahoma choice of law provision governing contract). In *C&L Enterprises, Inc.*, the Supreme Court addressed whether a mandatory arbitration provision in a contract constituted a clear waiver of sovereign immunity. The contract at issue in *C&L* "expressly agreed to arbitrate disputes with C&L relating to the contract, to the governance of Oklahoma law, and to the enforcement of arbitral awards 'in any court having

jurisdiction thereof.'"  *C&L Enterprises, Inc.*, 532 U.S. at 414.  In its analysis of whether these provisions constituted an explicit or clear waiver of sovereign immunity, the Supreme Court noted that the tribe "agreed to adhere" to the contract's "dispute resolution regime"—mandatory arbitration—and "[t]hat regime has a real world objective[.] . . . And to the real world end, the contract specifically authorizes judicial enforcement of the resolution arrived at through arbitration." *Id*. at 422.  The Court then cited to several cases for the proposition that an agreement requiring that disputes be settled by arbitration necessarily requires a waiver of sovereign immunity.  *Id*. (citing *Native Vill. of Eyak v. GC Contractors*, 658 P.2d 756, 760 (Alaska 1983); *Val/Del, Inc. v. Superior Ct.*, 703 P.2d 502, 509 (Ariz. Ct. App. 1985); *Rosebud Sioux Tribe v. Val-U Constr. Co*., 50 F.3d 560, 562 (8th Cir. 1995)).

This case differs from *C&L* because here the parties *did not* agree to resolve all disputes exclusively by arbitration and this is not a suit to enforce an arbitration award, two requirements that underpin the Supreme Court's decision in *C&L*. Plaintiff's waiver argument rests on the language in the "Applicable Law" provision of the MSA:

> *[1]* This MSA shall be interpreted in accordance with the laws of the State of Texas, exclusive of its conflict of laws provisions.  *[2]* The laws of the State of Texas shall apply to *any mediation, arbitration, or litigation* arising under this MSA and any mediation or arbitration shall be controlled by the rules of the American Arbitration Association. *[3]* The *exclusive jurisdiction for all disputes* arising between the Parties in connection with this MSA *shall be the state and federal courts located in Harris County, Texas, and each Party hereby submits*

> *itself to the exclusive jurisdiction of such courts subject to the foregoing restrictions*.

ECF 24-2 at 7 (numbering and italics added).  Unlike the contractual provision at issue in *C&L*, the MSA does not mandate a particular form of dispute resolution. Sentence 1 is simply a choice of law provision for interpreting the MSA.  Sentence 2 requires that Texas law "shall apply *to any mediation, arbitration, or litigation arising under the MSA*" and that *any mediation or arbitration shall be governed by the rules of the American Arbitration Association*.  Thus, Sentence 2 simply requires that Texas law applies in the event of any mediation, arbitration or litigation, and that the American Arbitration Association Rules (AAA Rules) apply in the event of any mediation or arbitration.  Unlike the mandatory arbitration provision in *C&L*, the MSA does not mandate an exclusive dispute resolution process, but rather permits disputes to be resolved by any of three methods:  arbitration, mediation, or litigation.

Sentence 3 comes closest to providing a clear waiver of immunity because it mandates "the state and federal courts located in Harris County, Texas," as the "exclusive jurisdiction for all disputes[,]" and provides that "each Party hereby submits itself to the exclusive jurisdiction of such courts subject to the foregoing restrictions."  If Sentence 3 were the only sentence in the Applicable Law section, it could conceivably represent an agreement to bring all disputes in the state and federal courts of Harris County, Texas.  However, Sentence 2 references "mediation,

arbitration, or litigation."  Sentence 3 cannot be read as an agreement to submit all disputes to the state and federal courts of Harris County without rendering Sentence 2 meaningless.  The Court will not interpret contract language in a way that renders any provision meaningless.  *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, 68 F.4th 206, 216 (5th Cir. 2023) (explaining that when interpreting a contract "courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless") (emphasis in original).

Strictly construing the provision in favor of GRTI and without rendering any provision meaningless, Sentence 3 is best interpreted as a forum selection clause. *See Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1010 (10th Cir. 2015) (stating that, read in conjunction with provision expressly reserving sovereign immunity, provision stating "original jurisdiction . . . [over] any dispute . . . shall be in the United States District Court for the District of Utah" was "best understood as a forum selection clause.")   Here, when Sentence 3 is read in conjunction with Sentence 2, it reasonably can be interpreted as an exclusive venue provision that waives arguments about venue and personal jurisdiction, but not sovereign immunity.  In other words, Sentence 3 appears to be a provision which speaks to *where* a suit may be brought but not *whether* a suit may be brought.  *See Breakthrough*, 629 F.3d at 1178 (explaining district court's reasoning that *exclusive*

*venue provision* in contract *did not constitute waiver of tribe's immunity* because the "Tribe did not expressly agree to submit any dispute for adjudication, it merely agreed *where* such adjudication would take place if it were to occur").

Because Sentences 2 and 3 create ambiguity as to whether Sentence 3 is a venue provision or a mandatory agreement to submit all disputes to state and federal courts in Harris County, Texas, no clear waiver of sovereign immunity exists. The only "clear" interpretation of the language in the MSA is that, to the extent GRTI participates in mediation, arbitration, or litigation with CHR: Texas law applies, the exclusive venue for any litigation is state and federal courts in Harris County, Texas, and no party to litigation can argue a lack of personal jurisdiction in Harris County, Texas. Exclusive venue does not waive sovereign immunity. *See Aron Sec., Inc. v. Unkechaug Indian Nation*, 54 N.Y.S.3d 668, 670 (App. Div. 2017) (holding that choice of law provision and agreement that "any claim or action . . . under th[e] Contract shall be brought only in Suffolk County and the parties agree to forebear from filing a claim in any other jurisdiction" when construed against the drafter and against a waiver of immunity, did not constitute an unequivocal waiver of sovereign immunity; parties could "bring a claim before a mediator, an arbitrator, a tribal court, a state court, or a federal court, as long as the selected forum was located in Suffolk County").

Nothing in the MSA obligates the parties to participate in a particular type of dispute resolution, much less mandatory arbitration as was the case in *C&L*. The language in the MSA must be strictly construed against CHR and in favor of sovereign immunity. *C&L*, 532 U.S. at 422 (noting courts construe ambiguous language against the interest of the party that drafted it); *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir. 1995) (stating that purported waivers of tribal sovereign immunity are "strictly construed in favor of the tribe"). In light of the fact that CHR bears the burden to prove an express waiver of sovereign immunity, and that the purported waiver language must be strictly construed in favor of GRTI and sovereign immunity, the Court agrees with GRTI that the MSA's "Applicable Law" provision is ambiguous and therefore does not constitute a clear or explicit waiver of sovereign immunity.

### C. Plaintiff's exhaustion arguments are moot.

Because the Court concludes that GRTI is entitled to dismissal without prejudice based on sovereign immunity, Plaintiff's exhaustion arguments need not be addressed.

### D. Additional discovery and leave to amend would be futile.

"The party seeking discovery bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (citation omitted). Furthermore, a party seeking additional jurisdictional discovery must "specifically

demonstrat[e] how postponement of a ruling on the motion will enable [it], by discovery or other means, to rebut the movant's showing." *Id.* at 341 (cleaned up). A party seeking discovery may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts[,]" and should meet its burden by alleging the "specific facts crucial to immunity which demonstrate a need for discovery." *Id*. at 341–42 (cleaned up).

Plaintiff's Response to the Motion to Dismiss requests additional discovery in the event the Court grants the Motion to Dismiss but states only that "[a] more satisfactory showing of facts is necessary for the Court to reach a determination that it lacks jurisdiction," and that "CHR has no means to secure evidence to verify or disprove its belief about the Community's lack of tribal control or benefit without engaging in jurisdictional discovery." ECF 24 at 28. Likewise, at the oral hearing on the Motion to Dismiss, Plaintiff neither identified specific discovery needed to respond to the Motion, nor renewed its request for additional discovery. The Court finds the record contains sufficient and uncontroverted evidence to support a finding that GRTI is an arm of the tribe entitled to sovereign immunity. The Court also finds that Plaintiff failed to meet its burden to demonstrate the need for additional discovery and the request is therefore denied.

Plaintiff also seeks leave to amend in the event GRTI's motion is granted. ECF 24 at 28. Plaintiff contends that if granted leave to amend, it would add

allegations challenging the tribal court's jurisdiction, which in turn would create federal question jurisdiction. In fact, a dispute over whether an Indian Tribe may compel a non-Indian party to submit to the civil jurisdiction of the tribal court can support federal question jurisdiction under 28 U.S.C. § 1331. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 852 (1985). However, a tribal court's jurisdiction should first be challenged in the tribal court, which Plaintiff has not done. *See Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Rsrv.*, 495 F.3d 1017, 1023 (8th Cir. 2007) (discussing *National Farmers* and finding that federal question did not exist because plaintiff "ha[d] never challenged the tribal court's jurisdiction in the tribal court"); *see also Weeks*, 797 F.2d at 672 n.3 ("Because Weeks has never brought this suit before the tribal court, the tribal court's authority has not been similarly challenged here."). Accordingly, leave to amend would be futile and Plaintiff's request is denied.

## IV.  Conclusion.

For the reasons stated above, Defendant Gila River Telecommunications, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF 18) is GRANTED and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

Signed on January 30, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

28